UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SANDRA (GARCIA) OLVERA,
Personal Representative of the Estate of                 CIVIL NO.
K.M.O., deceased,

   Plaintiff,                                        HON.

 -vs-

RADHA CHERUKURI, M.D., MATERNAL
FETAL MEDICINE, P.C., THOMAS SCOTT
MARKUS, M.D., DOUGLAS JAY SAYLOR,
M.D., HDI OBSTETRICS AND GYNECOLOGY
and BAY REGIONAL MEDICAL CENTER,

   Defendants.

_____/

## NOTICE OF REMOVAL

 Defendants Thomas Scott Markus, M.D. ("Dr. Markus"), Douglas Jay Saylor, M.D. ("Dr.

Saylor") and HDI Obstetrics and Gynecology, by their attorneys, Terrence Berg, Acting United

States Attorney for the Eastern District of Michigan, and Peter A. Caplan, Assistant U.S.

Attorney, pursuant to 42 U.S.C. § 233 and 28 U.S.C. § 2679(d), hereby remove this action (Case

No. 08-002791), which now is pending in the State of Michigan Saginaw County Circuit Court,

from said circuit court to the United States District Court for the Eastern District of Michigan,

Northern Division. This action is subject to removal because the defendants, Dr. Markus and Dr.

Saylor, at all times relevant to this matter were employees of defendant Health Delivery, Inc.,

a/k/a HDI Obstetrics and Gynecology, which has been deemed eligible for coverage under the

Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), pursuant to the Federally Supported

Health Centers Assistance Act of 1992 (Public Law 102-501), 42 U.S.C. § 233(g)(1).

Accordingly, Health Delivery Inc. is an "entity" within the meaning of 42 U.S.C. § 233(g), and

Dr. Markus and Dr. Saylor are employees of an entity within the meaning of 42 U.S.C. § 233(g),

and therefore they all are deemed to be employees of the United States Public Health Service

covered by 42 U.S.C. § 233(a) and (c).   Because they are deemed to be employees of the U.S.

Public Health Service, defendants, Dr. Markus, Dr. Saylor and HDI Obstetrics and Gynecology,

are eligible for coverage under the FTCA pursuant to 42 U.S.C. § 233(a) and (g).   Under 42

U.S.C. § 233(a) and (g), a claim against the United States pursuant to the FTCA is the exclusive

remedy available to the plaintiff in this case with respect to the alleged acts or omissions of

defendants Drs. Markus and Saylor and HDI Obstetrics and Gynecology.

This action also is removable because Elizabeth J. Larin, Chief of the Civil Division of

the United States Attorney's Office for the Eastern District of Michigan, who is the appropriate

official of the Department of Justice, has certified that defendants, Dr. Markus, Dr. Saylor and

HDI Obstetrics and Gynecology, who have been deemed to be employees of the U.S. Public

Health Service, were acting in the scope of such employment at the time of the incidents out of

which this suit arose.

This removal is timely because an action may be removed under 28 U.S.C. § 2679(d) or

42 U.S.C. § 233(c) " . . . at any time before trial . . . ."   A copy of the complaint that was filed in

Saginaw County Circuit Court is attached.

WHEREFORE, petitioner requests that the files and pleadings filed in the Saginaw County Circuit Court, Case No. 08-002791, be transmitted forthwith by the Clerk of that Court to the Clerk of the United States District Court for the Eastern District of Michigan, as this action is now pending in this Court.

Respectfully yours,

TERRENCE BERG
Acting United States Attorney

s/Peter A. Caplan

PETER A. CAPLAN
Assistant U.S. Attorney
211 W. Fort St., Ste. 2001
Detroit, MI 48226
313-226-9784
Peter.Caplan@usdoj.gov
P30643

Dated: December 9, 2008

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SANDRA (GARCIA) OLVERA,
Personal Representative of the Estate of                    CIVIL NO.
K.M.O., deceased,

       Plaintiff,                                          HON.

   -vs-

RADHA CHERUKURI, M.D., MATERNAL
FETAL MEDICINE, P.C., THOMAS SCOTT
MARKUS, M.D., DOUGLAS JAY SAYLOR,
M.D., HDI OBSTETRICS AND GYNECOLOGY
and BAY REGIONAL MEDICAL CENTER,

       Defendants.
_____/

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a copy of the foregoing Notice of Removal has this 9th day of

December, 2008, been made upon the following by placing same in a post-paid envelope and

depositing said envelope into the United States mail addressed to:

Clerk of the Court                          Gregory M. Bereznoff
Saginaw County Circuit Court                812 S. Main Street, Ste. 230
Lower Level                                 Royal Oak, MI 48067-3280
111 S. Michigan Ave., Room 101
Saginaw, MI 48602


                          s/Peter A. Caplan
                        _____
                        PETER A. CAPLAN
                        Assistant U.S. Attorney

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF SAGINAW

SANDRA (GARCIA) OLVERA, Personal
Representative of the Estate of K    Mi
O!    , Deceased,

                 Plaintiff,

-vs-

RADHA CHERUKURI, M.D.; MATERNAL FETAL
MEDICINE, P.C.; THOMAS SCOTT MARKUS, M.D.;
DOUGLAS JAY SAYLOR, M.D.; HDI OBSTETRICS
AND GYNECOLOGY; and BAY REGIONAL
MEDICAL CENTER,

                 Defendants.

002791

Case No.  08                    NH-\

Hon. Fred L. Borchard P11003


A TRUE COPY
Susan Kaltenbach Clerk

GREGORY M. BEREZNOFF (P29104)
Attorney for Plaintiff
812 S. Main Street, Suite 230
Royal Oak, MI 48067-3280
(248) 543-1920/Fax (248) 543-2533

## COMPLAINT AND DEMAND FOR JURY TRIAL

There is no other civil action between these parties arising out of the
same transaction or occurrence as alleged in this Complaint pending in
this Court, nor has any such action been previously filed and dismissed
or transferred after having been assigned to a judge, nor do I know of
any other civil action, not between these parties, arising out of the same
transaction or occurrence as alleged in this Complaint that is either
pending or was previously filed and dismissed, transferred, or otherwise
disposed of after having been assigned to a judge in this Court.

By: _____
    GREGORY M. BEREZNOFF (P29104)

NOW COMES Plaintiff, SANDRA (GARCIA) OLVERA, Personal Representative

of the Estate of K    Mi    C        Deceased, by and through her attorney,

GREGORY M. BEREZNOFF, and for her Complaint and Demand for Jury Trial, states as follows:

1.    This is a civil action for damages.

2.    That the amount in controversy exceeds Twenty-Five Thousand Dollars ($25,000) and is otherwise within the jurisdictional parameters of this Court.

3.    That at all times material hereto Plaintiff's Personal Representative was a resident of the City of Saginaw, County of Saginaw, and State of Michigan.

4.    That the instant cause of action arose in the City of Saginaw, County of Saginaw, and State of Michigan.

5.    That at all times pertinent hereto, Defendant, Radha Cherukuri, M.D., continuously and systematically conducted the practice of medicine within the City of Saginaw, County of Saginaw, and State of Michigan.

6    That at all times pertinent hereto, Defendant, Thomas Scott Markus, M.D., continuously and systematically conducted the practice of medicine within the City of Saginaw, County of Saginaw, and State of Michigan.

7.    That at all times pertinent hereto, Defendant, Douglas Jay Saylor, M.D., continuously and systematically conducted the practice of medicine within the City of Saginaw, County of Saginaw, and State of Michigan.

8.    That at all times pertinent hereto, Defendant, Maternal-Fetal Medicine, P.C., was a duly organized Michigan corporation that employed Radha Cherukuri, M.D., or held him out as their ostensible agent, making such corporation liable for the actions or inactions of Radha Cherukuri, M.D. pursuant to the doctrine of respondeat superior.

9.    That at all times pertinent hereto, Defendant, Maternal-Fetal Medicine, P.C., continuously and routinely conducted business within the City of Saginaw, County of Saginaw, and State of Michigan.

10.    That at all times pertinent hereto, Defendant, HDI Obstetrics and Gynecology, continuously and routinely conducted business within the City of Saginaw, County of Saginaw, and State of Michigan; and employed and/or held out to the community as its agents, servants and/or employees, Defendants, Thomas Scott Markus, M.D. and Douglas Jay Saylor, M.D., making said corporate entity liable for the actions or inactions of such individuals which constitute negligence pursuant to the doctrine of respondeat superior.

11.    That at all times pertinent hereto, Defendant, Bay Regional Medical Center, operated an inpatient hospital facility known as Bay Regional Medical Center located in the City of Bay City, County of Bay, and State of Michigan.

12.    That on or about April 8, 2004, Plaintiff's Personal Representative, then known as Sandra Garcia, presented to the offices of HDI Obstetrics and Gynecology and was evaluated by Thomas Scott Markus, M.D. determining that said patient was pregnant and at such time said individuals owed duties set forth herein both to Plaintiff's Personal Representative and Plaintiff's Decedent.

13.    That on or about June 1, 2004, Plaintiff's Personal Representative reappointed at the offices of HDI Obstetrics and Gynecology and was reevaluated by agents, servants and/or employees thereof, and at such time, referral for a Level 2 ultrasound was made, and the results of such indicated a single amniotic sac, and referral was then made for participation of Maternal-Fetal Medicine in the form of Radha Cherukuri, M.D., at the offices of Maternal-Fetal Medicine.

14.    That on or about June 2, 2004, Plaintiff's Personal Representative appointed with Radha Cherukuri, M.D. at the offices of Maternal-Fetal Medicine, P.C., said referral being made for the purpose of caring and treating mono-amniotic twins, and Plaintiff's Personal Representative presented as a 22-year-old female G-2, P-1, 00-

3

1, with an estimated date of confinement of November 1, 2004, and date by ultrasound determined to be 18 weeks, 4 days gestation.

15.    That Radha Cherukuri, M.D. obtained history of full-term delivery induction for high blood pressure of existing baby with weight of 7 pounds, 13 ounces.

16.    That Radha Cherukuri, M.D confirmed mono-amniotic twins.

17.    That on ultrasound ordered by Radha Cherukuri, M.D., there appeared to be a single anterior placenta with no separating membrane between the twin babies.

18.    That Plaintiff's Personal Representative was advised by Radha Cherukuri, M.D. that mono-amniotic twins have a high risk of cord entanglement.

19.    That Radha Cherukuri, M.D. recorded in the medical record for Plaintiff's Personal Representative, the fact that the pregnancy constituted high risk for cord entanglement.

20.    That Plaintiff's Personal Representative returned to HDI Obstetrics and Gynecology on or about July 1, 2004, for ultrasound, which demonstrated good integral growth and documented fetal activity.

21.    That Plaintiff's Personal Representative reappointed with HDI Obstetrics and Gynecology on or about August 9, 2004, and was seen by agents, servants and/or employees of HDI Obstetrics and Gynecology.

22.    That Plaintiff's Personal Representative was advised to attend the hospital for non-stress tests two times weekly.

23.    That Plaintiff's Personal Representative returned to the offices of Maternal-Fetal Medicine and was seen by Radha Cherukuri, M.D., agent, servant and/or employee thereof, on July 13, 2004, and at such time, ultrasound revealed Twin A mostly to the right, vertex, no structural abnormalities detected. Twin B was higher in the uterus in transverse position; all measurements consistent with 24 weeks gestation

4

with the impression of intrauterine pregnancy mono-chorionic twin gestation, 24 weeks, with minimal amniotic fluid and probable cord entanglement.

24.    That on July 13, 2004, Radha Cherukuri, M.D. requested follow-up ultrasound in four weeks and suggestion was made for a non-stress test twice weekly beginning at 27-28 weeks.

25.    That on or about August 11, 2004, Plaintiff's Personal Representative reappointed with Radha Cherukuri, M.D. at Maternal-Fetal Medicine, P.C. for follow-up with mono-amniotic twins.

26.    That on or about August 11, 2004, Plaintiff's Personal Representative was begun on Procardia every six hours for contractions and complaint of nausea and occasional dizziness, and at such time Radha Cherukuri, M.D. determined that non-stress tests were reassuring and continued with suggested follow-up in two to three weeks.

27.    That on or about August 11, 2004, Plaintiff's Personal Representative reappointed with Maternal-Fetal Medicine, P.C. and was seen by Radha Cherukuri, M.D. complaining of lower abdominal discomfort.

28.    That on or about August 31, 2004, amniotic fluid appeared adequate and there appeared to be crossing over of umbilical cords with probable entanglement of the mid-part, and Radha Cherukuri, M.D. made impression of intrauterine twin gestation, mono-amniotic, 31 weeks, concordant growth, and at such time, monitoring was scheduled two to three times per week and amniocentesis was considered between 35 and 36 weeks.

29.    That on or about August 31, 2004, Radha Cherukuri, M.D. discussed Cesarean section with Plaintiff's Personal Representative due to high risk associated

with mono-amniotic twin delivery and potential and foreseeable cord compression and risk of fetal compromise and death.

30. That on or about September 1, 2004, telephonic conversation between Radha Cherukuri, M.D. and Thomas Scott Markus, M.D. occurred, and at such time, Radha Cherukuri, M.D. indicated it was permissible to follow Plaintiff's Personal Representative to maturity, and that physician employed by HDI Obstetrics and Gynecology could conduct delivery without assistance from Maternal-Fetal Medicine in the form of Radha Cherukuri, M.D.

31. That on or about September 1, 2004, Radha Cherukuri, M.D. noted Baby A had its cord wrapped around Baby B, which indicated a high potential for cord compression and compromise of Baby B.

32. That Radha Cherukuri, M.D. indicated all physicians should wait to 36 weeks for amniocentesis to confirm fetal maturity.

33. That Radha Cherukuri, M.D. opined he was "quite worried about these babies."

34. That at approximately 1300 hours on September 17, 2004, Sandra Garcia presented to Bay Regional Medical Center following non-reassuring stress test.

35. That at such time, Plaintiff's Personal Representative presented with threatened pre-term labor, and was in fact in labor.

36. That the nurses in attendance at Bay Regional Medical Center contacted Douglas Jay Saylor, M.D. regarding Plaintiff's Personal Representative's presentation; said physician phone ordered intermittent fetal monitoring in the face of high risk of cord compression, fetal compromise and death.

37. That the agents, servants and/or employees of Bay Regional Medical Center, in the form of nursing staff, turned off fetal monitor from time to time, despite the

6

obvious high risk nature of Plaintiff's Personal Representative's presentation and documented risk to mono-amniotic twin pregnancy, which included, but was not limited to, cord compression and fetal compromise and/or demise.

38.   That there were gaps of literally hours in fetal monitoring at Bay Regional Medical Center, which deprived individuals, including the nursing staff, of knowledge of the status of twin mono-amniotic gestational pregnancy.

39.   That at such time as monitors were reattached and turned on, there were decelerations and changes in baseline.

40.   That by 7:00 in the morning on the 18th, Baby B had persistent fetal tachycardia, a sign of in-utero distress, and despite such, agents, servants and/or employees of Bay Regional Medical Center failed and/or neglected to contact the attending physician and or to go up the chain of command to secure immediate cesarean delivery.

41.   That signs and symptoms of fetal distress, compromise and/or stress continued after the point in time the monitors were turned on, on the 18th, and despite such, attending physicians were not contacted by agents, servants and/or employees, including obstetrical nursing staff at Bay Regional Medical Center, in a timely manner nor given timely information.

42.   That at or about 10:00 a.m., Baby B was lost on fetal monitoring equipment.

43.   That Defendant Thomas Scott Markus, M.D. was not on-call on the date and at the time of Plaintiff's presentation and thereafter, and he failed to come to the hospital to see and/or evaluate Plaintiff's Personal Representative until approximately 10:00 a.m. on the 18th.

44.    That at or about 10:00 a.m., a bedside ultrasound was performed, and without explanation, a further 20 minutes passed before Defendant Markus called for an emergency C-section.

45.    That the nursing staff in attendance failed through direct order or through contact with a physician, to administer fluids, turn the mother to her side, and provide oxygen in a timely manner to relieve fetal tachycardia known as in utero resuscitation.

46.    That at no time did Douglas Jay Saylor, M.D. or Thomas Scott Markus, M.D. contact maternal-fetal specialist from the 17th until the time of demise of Baby B, or did agents, servants and/or employees of Bay Regional Medical Center contact said individual.

47.    That Defendant Saylor did not come to Bay Regional Medical Center in response to Plaintiff's Personal Representative's presentation and notification from nurses, after they made contact at 10:00 p.m. on the 17th, and throughout the evening of the 17th and morning of the 18th; twin gestational pregnancy and fetal distress continued without response.

48.    That agents, servants and/or employees, including obstetrical nurses at Bay Regional Medical Center failed or neglected to contact the attending physician at or about 7:00 to 7:30 a.m. on the 18th, when fetal distress was noted in the form of fetal tachycardia and change in baseline, and such individuals did not contact any attending until approximately 9:50 a.m.

49.    That nurses in attendance at Bay Regional Medical Center failed or neglected to perform adequate in-utero resuscitation.

50.    That nurses at Bay Regional Medical Center failed to contact the attending physician and/or go up the chain of command to obtain physician attendance for Plaintiff's Personal Representative at or about 7:00 to 7:30 a.m. on the 18th.

51.     That an order for STAT C-section was issued at or about 10:30 a.m. on September 18, issued by Thomas Scott Markus, M.D.

52.     That the history and physical dictated by Defendant Markus states at 6:50 a.m. on the morning of the 18th that fetal monitor tracings became abnormal for Baby B and disclosed that deceleration was lasting a minute and one-half to 90 beats per minute.

53.     That at the time the STAT Cesarean section was called at or about 10:40 a.m. on the 18th, Bay Regional Medical Center did not have an anesthesiologist in attendance and available to Plaintiff's Personal Representative and the physician who ordered the STAT Cesarean section.

54.     That at or about 10:55 a.m., an anesthesiologist was still not available, and the fetal heart rate decreased to 60 beats per minute.

55.     That due to the lack of anesthesiologist services at Bay Regional Medical Center, a Cesarean section was performed under local anesthetic, which subjected Plaintiff's Personal Representative to severe and traumatic physical pain and suffering and emotional distress, said section beginning at or about 11:00 a.m. on the morning of the 18th with delivery of Baby A at 11:07 a.m. and Baby B at 11:08 a.m.

56.     That upon delivery, Baby B was flaccid, with no APGAR score, and was stillborn at the time of delivery.

## Count I – Professional Negligence

57.     Plaintiff's Personal Representative hereby incorporates by reference herein each and every allegation made in Plaintiff's Complaint as if fully set forth.

58.     That Plaintiff's Decedent, other family members, and the Estate of Plaintiff's Decedent, did by implication or expression rely upon Defendants to do that which was necessary and proper, and in accordance with generally accepted standards

9

of medical and/or surgical care; and further, Defendants did then and there expressly and/or by implication represent they would employ due, reasonable, proper skill and care referable to delivery of Plaintiff's Decedent, that would be consistent with and in accord with then prevailing generally accepted standards of medical care within their respective areas of medicine and/or nursing, or otherwise obtainable within the general medical community.

59.     That the Defendant, jointly and severally, owed Plaintiff's Decedent a duty to adhere to all applicable and appropriate standards of medical care and treatment and had a duty to be competent to deliver patient care ordinarily obtainable at other similarly situated facilities within the general medical community, and use due and reasonable care and diligence in the exercise of those duties in furtherance of care and treatment rendered to Plaintiff's Decedent.

60.     That Defendant, Maternal-Fetal Medicine, P.C., by and though its agent, servant and/or employee, actual and ostensible, Radha Cherukuri, M.D., was negligent in the care and treatment rendered to Plaintiff's Decedent, and in disregard of the obligation owed to Plaintiff's Decedent, deviated from good and accepted standards of medical care in the following particulars:

a.     The standard of practice or care within maternal fetal medicine was breached because Radha Cherukuri, M.D. failed to manage the pregnancy herein to deliver or recommend delivery via caesarian section prior to fetal compromise.

b.     The standard of practice or care within maternal fetal medicine was breached because Radha Cherukuri, M.D. was not adequately skilled and trained such as would allow her to manage and effectively and safely deliver Baby A and Baby B before fetal compromise and/or foreseeable complications prior to delivery ensued.

c.     The standard of practice or care within maternal fetal medicine was breached because because Radha Cherukuri, M.D. failed to confine Sandra Garcia a/k/a Olvera to an appropriate hospital at or about 24 weeks for daily, intensive in-hospital monitoring and failed to appropriately determine and

document fetal maturity and failed to perform delivery of such children by Cesarean section after lung maturity was proven and/or before fetal compromise ensued.

d.     The standard of practice or care within maternal fetal medicine was breached because Radha Cherukuri, M.D. failed to deliver twin fetuses at such time as fetal maturity was proven via serial amniocenteses to be instituted at 32 weeks and thereafter.

e.     That the standard of care required maternal fetal medicine to perform the acts listed above which are described as failures to act, including timely C-section.

f.     As the direct and proximate cause of the violations of generally accepted standards of care, Sandra Garcia a/k/a Olvera was not afforded opportunity for a timely Cesarean section, which resulted in cord entanglement, hypoxia and anoxia of Baby B and the demise of Plaintiff's Decedent, Baby B. This pregnancy was proven to have two babies within the same sac. In such circumstances, there is a high risk of umbilical cord entanglement, hypoxia, anoxia, and death of one or both of the babies. In light of such high and foreseeable risk, documented in the records of all Defendants, particularly Radha Cherukuri, M.D., the standard of care required Defendants to admit Sandra Garcia a/k/a Olvera to the hospital for daily intensive monitoring at or about 24 weeks gestation to prevent the complications that can occur precipitously as a consequence of umbilical cord entanglement.

61.     That the Defendant, HDI Obstetrics and Gynecology, individually and by through its actual agents, servants and/or employees, Douglas Jay Saylor, M.D. and Defendant Thomas Scott Markus, M.D., pursuant to the doctrine of respondeat superior, were neglect in the care and treatment rendered to Plaintiff's Decedent and in disregard of duties and obligations owed to Plaintiff's Decedent deviated from good and accepted standards of medical care in the following particulars:

a.     The standard of practice or care within obstetrics and gynecology was breached because obstetricians and gynecologists including but not limited to Douglas Jay Saylor, M.D., and Thomas Scott Markus, M.D failed to be sufficiently educated, skilled and trained such as would allow either to manage Sandra Garcia a/k/a Olvera's twin pregnancy in accord with generally accepted standards of care.

b.     The standard of practice or care within obstetrics and gynecology was breached because Thomas Scott Markus, M.D. and Douglas Jay Saylor,

M.D. failed to turn over management of the pregnancies at issue to maternal fetal medicine in light of the high indicia and likelihood of significant complications including cord compression during labor and delivery.

c.      The standard of practice or care within obstetrics and gynecology was breached because Douglas Jay Saylor, M.D. failed to order continuous fetal monitoring after such time as Sandra Garcia a/k/a Olvera presented to Bay Regional Medical Center on the, and to order Cesarean Section in light of the fact that Sandra Garcia a/k/a Olvera had begun the labor process.

d.      The standard of practice or care within obstetrics and gynecology was breached because Thomas Scott Markus, M.D. and Douglas Jay Saylor, M.D. failed to immediately attend at Bay Regional Medical Center upon presentation of Sandra Garcia a/k/a Olvera and otherwise immediately attend at such time as they were contacted regarding her presentation on either the 17th or 18th.

e.      The standard of practice or care within obstetrics and gynecology was breached because Douglas Jay Saylor, M.D. failed to order continuous fetal monitoring throughout the night of September 17-18.

f.      The standard of practice or care within obstetrics and gynecology was breached because Thomas Scott Markus, M.D. and Douglas Jay Saylor, M.D. failed to admit Sandra Garcia a/k/a Olvera to the hospital at 32 weeks gestational age for continuous monitoring, steroid prep at 28 weeks, determination of fetal lung maturity and immediate delivery by Cesarean section thereafter.

g.      The standard of practice or care within obstetrics and gynecology was breached because Thomas Scott Markus, M.D. and Douglas Jay Saylor, M.D. failed to turn this high risk pregnancy over to specialists in maternal fetal medicine due to the high risk of cord compression secondary to nature of twin pregnancy requiring them to determine fetal maturity lung and deliver at such time as said finding is established.

h.      The standard of practice or care within obstetrics and gynecology was breached because Thomas Scott Markus, M.D. and or Douglas Jay Saylor, M.D. failed to contact the maternal fetal medicine specialist upon presentation of Sandra Garcia a/k/a Olvera to Bay Regional Medical Center on September 17 or 18 when they began call and/or were contacted by the nursing staff, for purposes of consultation and determination of appropriate management of pregnancy, order and perform Cesarean section at such time as Sandra Garcia a/k/a Olvera presented on the 17th/early hours of the 18th in light of results NST and due to the fact that she was in labor.

i.      The standard of practice or care within obstetrics and gynecology was breached because Douglas Jay Saylor, M.D. failed to respond appropriately to nursing contact at 10:00 p.m. on September 17 and failed to immediately go to the hospital to evaluate and order and perform Cesarean section as opposed to

remaining at home or at some other location and issue phone orders.

j.       The standard of practice or care within obstetrics and gynecology was breached because Thomas Scott Markus, M.D. and/or Douglas Jay Saylor, M.D. failed to order taps and/or amniocentesis after 32 weeks to determine fetal lung maturity.

k.       The standard of practice or care within obstetrics and gynecology was breached because Douglas Jay Saylor, M.D. failed to deliver Sandra Garcia a/k/a Olvera by Cesarean section at such time as NST was non-reassuring on or about the l7th.

l.       The standard of practice or care within obstetrics and gynecology was breached because Thomas Scott Markus, M.D. failed to take Sandra Garcia a/k/a Olvera for immediate Cesarean section when contacted as opposed to monitoring expectancy on or about the 18th after non-reassuring non-stress test and after reviewing content of fetal monitoring showed change in baseline, tachycardia, decelerations, and other changes and in light of the fact that she had begun labor.

m.       The standard of practice or care within obstetrics and gynecology was breached because Thomas Scott Markus, M.D. failed to immediately attend Sandra Garcia a/k/a Olvera at Bay Regional Medical Center upon first contact on the l8th.

n.       The standard of practice or care within obstetrics and gynecology was breached because Thomas Scott Markus, M.D. failed to attend his patient, go to the hospital, order and perform stat Cesarean section upon first contact with Sandra Garcia a/k/a Olvera on the 18th Due to signs of fetal non-reassurance.

o.       The standard of practice or care within obstetrics and gynecology was breached because Douglas Jay Saylor, M.D. failed to contact the maternal fetal medicine specialist upon presentation of Sandra Garcia a/k/a Olvera to Bay Regional Medical Center on September 17 for purposes of consultation and determination of appropriate management of pregnancy, order and perform Cesarean section at such time as Sandra Garcia a/k/a Olvera presented on the 17th/early hours of the 18th

p.       The standard of practice or care within obstetrics and gynecology was breached because Thomas Scott Markus, M.D. and or Douglas Jay Saylor, M.D. failed to administer dexamethasone (steroid prep) beginning at or about or about 28 weeks.

q.       The standard of practice or care within obstetrics and gynecology was breached because Thomas Scoff Markus, M.D. and or Douglas Jay Saylor, M.D. administered Procardia in an attempt to stop labor.

r.       As the direct and proximate cause of the violations of generally

13

accepted standards of care, Sandra Garcia a/k/a Olvera was not afforded opportunity for a timely Cesarean section, which resulted in cord entanglement, hypoxemia, hypoxia and anoxia of the fetus which caused fetal demise of Plaintiff's Decedent after resuscitation. This pregnancy was proven to be and consisted of two babies within the same sac. In such circumstances, there is a high risk of cord entanglement if the pregnancy is allowed to continue and a high risk of strangulation for one or both of the babies. In light of such high risk, documented in the records of all defendants, particularly Radha Cherukuri, M.D., the standard of care required defendants to admit Sandra Garcia a/k/a Olvera for continuous monitoring at 32 weeks. Further, defendants obstetricians and gynecologists each had a duty to perform Cesarean section on first contact with the case either on the 17th and or 18th. Further, as the direct and proximate cause of the negligence set forth herein plaintiffs decedent sustained permanently impaired cognitive capacity rendering her incapable of making independent responsible life decisions and permanently incapable of independently performing the activities of normal daily living.

62.    That the Defendant Bay Regional Medical Center owed Plaintiff's Decedent a duty to be treated with all applicable and appropriate standards of medical care and nursing care and treatment, and had a duty to be competent, to provide individuals who would be capable of delivering nursing care ordinarily obtained in other similarly situated facilities within the general medical community, and to use due and reasonable care and diligence in the exercise of those duties in furtherance of care and treatment to Plaintiff's Decedent.

63.    That the employees of Defendant, to wit:  nursing personnel in the labor and delivery area, the actual and/or ostensible agents, servants and/or employees of Defendant institution, who were assigned by Defendant institution to provide care and treatment to Plaintiff's Decedent and such individuals, owed Plaintiff's Decedent a duty to be competent and deliver the standard of care generally obtainable at other medical institutions within the relevant medical community, and had a duty to adhere to any and all appropriate medical standards and general standards of nursing care; and said individuals were negligent in the care and treatment rendered to Plaintiff's Decedent in the course of labor and delivery, and that in disregard of the duties and obligations

14

owed to Plaintiff's Decedent, deviated from good and accepted standards of medical care in the following particulars:

      a.    The standard of practice or care within nursing was breached because any and all nurses in attendance at the bedside of Sandra Garcia a/k/a Olvera failed to appreciate evidence of fetal compromise of Baby B as described on fetal heart monitoring strips and otherwise the clinical condition in existence at the time in the then unborn fetus B.

      b.    The standard of practice or care within nursing was breached because any and all nurses in attendance failed to appreciate the significance of symptoms and complications and compromise exhibited by Sandra Garcia a/k/a Olvera and her then unborn child, Baby B, during the labor and delivery process.

      c.    The standard of practice or care within nursing was breached because any and all nurses in attendance failed to act in a timely manner by virtue of adequate monitoring of then unborn Baby B by accurately interpreting fetal heart monitor strips and reconciling them to the clinical condition of the mother and the baby at that time, and failed to contact the attending physician in a timely manner and so advise the attending physician of the findings, including contact on the evening of presentation and the morning of the day of delivery at or about 6:30, 7:00 and thereafter.

      d.    The standard of practice or care within nursing was breached because any and all nurses in attendance failed to recognize ominous fetal heart tracings and act appropriately concerning such including, but not limited to, immediate contact of the attending physician for notification.

      e.    The standard of practice or care within nursing was breached because any and all nurses in attendance at the labor and delivery described herein failed to contact and advise the attending physician of fetal compromise, tachycardia and changing baseline and failed to inform the physician that his attendance at bedside was required on a stat basis.

      f.    The standard of practice or care within nursing was breached because any and all nurses in attendance at the labor and delivery described herein failed to follow the protocol and minimum standard of care and contact the appropriate medical personnel throughout the hospital chain of command, including, but not limited to, Thomas Scott Markus, M.D. and/or Douglas Jay Saylor, M.D. and/or the head nurse or charge nurse on duty and/or the director of the department of obstetrics and gynecology, in a timely manner with due consideration for the signs and symptoms of the mother and child, Baby B, and the

nature and content of the fetal monitoring strip readings and to suggest a stat C-section on or before 8:30 a.m. on the 18th.

g.     The standard of practice or care within nursing was breached because Bay Regional Medical Center failed to provide obstetric nurses in the labor and delivery area that were properly skilled, trained, and who were otherwise competent to interpret fetal heart monitor strips from a nursing standpoint and to contact and advise the attending physicians of ominous findings on the fetal heart monitoring strips and/or to go up the chain of command in a timely manner to secure adequate care and treatment for Sandra Garcia a/k/a Sandra Olvera.

h.     The standard of practice or care within nursing was breached because any and all nurses in attendance at the labor and delivery described herein failed to exercise due care and caution under the prevailing circumstances.

i.     The standard of practice or care within nursing was breached because any and all nurses in attendance at the labor and delivery described herein failed to take adequate precautions under the prevailing circumstances for the protection of Sandra Garcia a/k/a Olvera and her then unborn child, Baby B.

j.     The standard of practice or care within nursing was breached because any and all nurses in attendance at the labor and delivery described herein failed to notify Douglas Jay Saylor, M.D. and/or Thomas Scott Markus, M.D. and/or Radha Cherukuri, M.D. on a timely basis, informing them of any and all significant occurrences in the labor and delivery described herein, including, but not limited to, changing baseline, fetal tachycardia, loss of variability, and decelerations demonstrated on fetal monitoring strips at the time of their occurrence.

k.     The standard of practice or care within nursing was breached because any and all nurses in attendance at the labor and delivery described herein failed to administer oxygen when indicated by the clinical circumstances and fluids, and move Sandra Garcia a/k/a Olvera to her side as needed during labor and delivery.

l.     The standard of practice or care within nursing was breached because any and all nurses in attendance at the labor and delivery described herein failed to exercise that degree of skill and care in the management of Sandra Garcia a/k/a Olvera and Sandra Garcia a/k/a Olvera's unborn child such as was required under the applicable standard of care, and, in particular, to properly interpret and monitor clinical indicia of the wellbeing of the unborn children, and to apply continuous, as opposed to intermittent, fetal monitoring.

m.     The standard of practice or care within nursing was breached because any and all nurses in attendance at the labor and

delivery described herein failed to institute proper nursing management and/or treatment for Sandra Garcia a/k/a Olvera by requesting or urging medical personnel to provide appropriate care and treatment including emergency or stat C-section in a timely manner and, in the absence of compliance of the attending physician or physicians to such recommendation, to move up the chain of command to the head charge nurse and/or director of the department of obstetrics and gynecology, if necessary, and take whatever steps were mandated or allowed in the hospital and/or procedure and/or protocol with respect to movement up the chain of command to obtain a stat C-section.

n.     The standard of practice or care within nursing was breached because any and all nurses in attendance at the labor and delivery described herein failed to timely and adequately monitor the then unborn children of Sandra Garcia a/k/a Olvera.

o.     The standard of practice or care within nursing was breached because any and all nurses in attendance at the labor and delivery described herein failed to properly interpret fetal heart monitor tracings to appreciate decelerations, change in baseline and tachycardia which were present for an extended period of time and continually and systematically deteriorated after initial presentation and to act by contacting the attending, and or consulting physician and otherwise move up the hospital chain of command to obtain a stat C-section.

p.     The standard of practice or care within nursing was breached because any and all nurses in attendance at the labor and delivery described herein failed to timely advocate for and request a Cesarean section in the face of non-reassuring fetal monitor tracings which included decelerations, tachycardia and change in baseline.

q.     The standard of practice or care within nursing was breached because any and all nurses in attendance at the labor and delivery described herein failed to accurately reflect in the hospital chart the content of all reports given to any and all attending physicians and/or house physicians.

r.     The standard of practice or care within nursing was breached because any and all nurses in attendance at the labor and delivery described herein failed to contact an attending physician, nurse supervisor and/or head of the OB-GYN department, at or about 6:30 to 7:30 a.m. when evidence of fetal tachycardia began.

s.     Plaintiff expressly reserves the right to amend Plaintiff's Complaint to set forth further and additional deviations from generally accepted standards of care as will be disclosed pursuant to the discovery process, including, but not limited to, review of additional medical records and the depositions of Defendants herein.

17

64.     That as the direct and the proximate cause of violations of generally accepted standards of care set forth herein, Plaintiff's Decedent's mother and Plaintiff's Decedent were not afforded opportunity for a timely Cesarean section, which resulted in cord entanglement, hypoxemia and anoxia of the fetus, and fetal compromise and stillbirth of Plaintiff's Decedent.

65.     That at such time as fetal viability was proven, the standard of care was violated in that Plaintiff's Personal Representative's children were not delivered by Cesarean section, which resulted in cord entanglement, a foreseeable and preventable known risk of the pregnancy, fetal compromise of Baby B, fetal hypoxia, fetal anoxia and death.

66.     That had the instant pregnancy been delivered by Cesarean section on or before 8:30 a.m. on September 18, both babies would have survived and would have been healthy newborns; however, the lack of appropriate management; lack of consultation in management by Maternal-Fetal Medicine; failure to obtain fetal maturity studies; and, failure to deliver by Cesarean section on the 17th or early hours on the 18th, resulted in cord entanglement and stillbirth of Baby B from fetal anoxia.

67.     That the instant cause of action is brought pursuant to the Michigan Wrongful Death Statute and is a cause of action for the wrongful death of Plaintiff's Decedent, otherwise known as Baby B.

68.     That Plaintiff hereby puts all Defendants on notice that Plaintiff will claim any and all damages available pursuant to the Michigan Standard Jury Instructions and the case law made and provided thereunder, including economic and non-economic damages both past and future.

69.     That is a direct and proximate result and cause of the negligent set forth here in Plaintiffs Decedent sustained permanently impaired cognitive capacity rendering

her incapable of making independent, responsible life decisions and permanently incapable of independently performing the activities of normal daily living inciting the second tier noneconomic cap which is applicable hereto found at MCLA 600 .1483

WHEREFORE, Plaintiff respectfully requests damages from Defendants in excess of Twenty-five Thousand ($25,000) Dollars, in whatever form and amount allowed, provided such damages are full, fair and just compensation reflecting the loss of Plaintiff's Decedent, and pain and suffering inflicted upon Plaintiff's Decedent's mother, the Personal Representative herein, pursuant to the Michigan Wrongful Death Statute. Plaintiff hereby requests costs, interest and attorney fees wrongfully incurred and other applicable sanctions, and puts Defendants on notice that at the time of trial Plaintiff will claim any and all damages enumerated within the Michigan Wrongful Death Act appropriate to remedy the loss sustained herein as well as other damages.

LAW OFFICES OF GREGORY M. BEREZNOFF


GREGORY M. BEREZNOFF (P29104)
Attorney for Plaintiff
812 S. Main Street, Suite 230
Royal Oak, MI 48067-3280
(248) 543-1920/Fax (248) 543-2533

### DEMAND FOR JURY TRIAL

NOW   COMES   the   Plaintiff,   SANDRA   (GARCIA)   OLVERA,   Personal

Representative of the Estate of K    M       O      otherwise known as Baby B,

Deceased, by and through her attorney, GREGORY M. BEREZNOFF, and hereby

demands a jury trial of all factual issues presented in the above-entitled cause of action.

LAW OFFICES OF GREGORY M. BEREZNOFF

GREGORY M. BEREZNOFF (P29104)
Attorney for Plaintiff
812 S. Main Street, Suite 230
Royal Oak, MI 48067-3280
(248) 543-1920/Fax (248) 543-2533

Dated:  September 23, 2008